IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH BUSINESS INSURANCE COMPANY, INC., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLEAR DATA STRATEGIES, LLC, a Connecticut limited liability company,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER COMPELLING ARBITRATION**<br><br>Case No. 2:15-cv-00210-DN<br><br>District Judge David Nuffer |

## BACKGROUND

Plaintiff Utah Business Insurance Company, Inc. ("UBIC") and Defendant Clear Data Strategies, LLC ("CDS") entered into a software license agreement. UBIC was given a "perpetual non-exclusive license" to use CDS's software in exchange for UBIC's agreement to pay CDS.[1] Paragraph 12 of the agreement included the following provision:

> RESOLUTION OF CONFLICT. Both parties agree that during a thirty (30) day period after written notice is given to the other party of a dispute under the terms of this Agreement that they will use their best efforts to resolve any dispute through good faith negotiations. Should such dispute not be resolved to each party's satisfaction through good faith negotiations then both parties agree to retain a mutually agreed upon arbitrator and resolve the dispute through binding arbitration, the expense of such arbitration to be shared by both parties equally.[2]

According to UBIC, it gave written notice to CDS on July 31, 2014 that it was dissatisfied with the performance of the software and demanded that CDS fix the software to UBIC's satisfaction.[3] UBIC claims that on March 4, 2015 it demanded arbitration pursuant to

---

[1] Complaint at ¶ 10, docket no. 2, filed March 30, 2015.

[2] Clear Data – Software License and Support/Services Agreement at ¶ 12, attached as Exhibit A to Complaint, docket no. 2-2, filed March 30, 2015.

[3] Complaint at ¶ 15.

paragraph 12 of the parties' agreement because the software still did not perform as expected.[4] In response to the March 4 demand, CDS stated it was "agreeable to an Arbitration to be conducted in Connecticut . . . and expect it will be finished closer to the end of the year."[5] Because of the dispute as to location and time for the arbitration, UBIC filed the instant action seeking "an Order compelling CDS to submit to binding arbitration in the State of Utah, within the next four months, and that the arbitrator be Tim Houpt, Warren Driggs or Sandra Peuler."[6]

## DISCUSSION

The Federal Arbitration Act allows a party seeking to enforce an arbitration agreement to "petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[7] If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."[8] "The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."[9]

---

[4] Complaint at ¶¶ 19-20.

[5] Letter from Chris Kinkade to Ryan Atkinson, attached as Exhibit D to Complaint, docket no. 2-5, filed March 30, 2015.

[6] Complaint at 6.

[7] 9 U.S.C. § 4.

[8] 9 U.S.C. § 4.

[9] 9 U.S.C. § 4.

Here, the making of the agreement or the failure to comply with it is not in issue. In fact, CDS stated it was "agreeable to an Arbitration."[10] Rather, the issue is *where* and *when* the arbitration should take place.

The plain language of section 4 of the FAA states *where* the arbitration should take place. "The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."[11] The petition was filed in the District of Utah; therefore, the arbitration "shall" be conducted in Utah. Because the parties' agreement does not specify a location for arbitration (and actually states that Utah law will govern), this court has jurisdiction to decide where arbitration will take place.[12]

As to the question of *when* the arbitration should take place, UBIC's request is reasonable. The parties' agreement provides a thirty-day window to resolve conflicts prior to arbitration. That window opened when UBIC gave notice to CDS in July 2014. Nearly a year has passed since that request was made, and the parties apparently still have not resolved their conflicts. Therefore, UBIC's petition asking for the arbitration to commence within four months of the filing of the petition is reasonable.

UBIC asks for appointment of one of three arbitrators. CDS should have some voice in selection, because the clause calls for "a mutually agreed upon arbitrator." But the court can fill the gap if an agreement is not reached.

## ORDER

IT IS HEREBY ORDERED that binding arbitration between UBIC and CDS will take place in the District of Utah.

---

[10] Letter from Chris Kinkade to Ryan Atkinson, attached as Exhibit D to Complaint, docket no. 2-5, filed March 30, 2015.

[11] 9 U.S.C. § 4.

[12] *See Ansari v. Qwest Comm. Corp.*, 414 F.3d 1214 (10th Cir. 2005).

IT IS FURTHER ORDERED that arbitration must commence on or before July 24, 2015. For purposes of this order, "commence" means the parties must hold a meet and confer to mutually agree on an arbitrator to resolve the dispute, in accordance with paragraph 12 of the license agreement. After an arbitrator is agreed upon, further deadlines will be determined by the arbitrator. If the parties do not come to a mutual agreement regarding an arbitrator, each party must submit to the court on July 10, 2015 the names of three arbitrators, and the court will select one from among the names submitted.

Dated June 26, 2015.

BY THE COURT:

_____
David Nuffer
United States District Judge